OPINIONS OF THE SUPREME COURT OF OHIO

The full texts of the opinions of the Supreme Court of Ohio are being transmitted electronically beginning May 27, 1992, pursuant to a pilot project implemented by Chief Justice Thomas J. Moyer.

Please call any errors to the attention of the Reporter's Office of the Supreme Court of Ohio. Attention: Walter S. Kobalka, Reporter, or Deborah J. Barrett, Administrative Assistant. Tel.: (614) 466-4961; in Ohio 1-800-826-9010. Your comments on this pilot project are also welcome.

NOTE: Corrections may be made by the Supreme Court to the full texts of the opinions after they have been released electronically to the public. The reader is therefore advised to check the bound volumes of Ohio St.3d published by West Publishing Company for the final versions of these opinions. The advance sheets to Ohio St.3d will also contain the volume and page numbers where the opinions will be found in the bound volumes of the Ohio Official Reports.

The State ex rel. Welch, Appellant, v. Industrial Commission of Ohio, Appellee, et al.

[Cite as State ex rel. Welch v. Indus. Comm. (1994),      Ohio St.3d     .]

Workers' compensation -- Industrial Commission denies claimant's motion for a change in starting date for permanent total disability benefits -- Commission's decision not to rely on medical report not an abuse of discretion when author of medical report believes that the report is an improper foundation on which to base an impairment assessment.

(No. 92-2489 -- Submitted November 9, 1993 -- Decided February 2, 1994.)

Appeal from the Court of Appeals for Franklin County, No. 91AP-1180.

Appellant-claimant, Emma C. Welch, was injured in 1972 during the course of and arising from her employment with J.B. Foote Foundry Company. Her workers' compensation claim was subsequently allowed for "[n]eck and back injuries; aggravation of pre-existing degenerative disc disease [of the] lumbar spine." In 1986, claimant applied for permanent total disability compensation. Her application was denied.

On April 21, 1988, claimant reapplied for permanent total disability compensation. Claimant submitted the August 6, 1987 report of Dr. Albert L. Timperman, who diagnosed "probable degenerative spine disease, nonoperable in nature." He also noted that:

"The patient is to obtain complete spine films * * * today at the Mansfield General Hospital. They will be perused and an additional comment will be made following that study."

Dr. James D. Curry administered claimant's final X-rays. His August 18, 1987 summary of the results revealed:

"* * * [M]oderate narrowing of the C5-6 disc space with slightly lesser narrowing at C6-7 and C4-5. * * * The oblique views show encroachment of the intervertebral foramen bilaterally at C6-7 and at C5-6. * * *

"Impression: Degenerative arthritis with narrowing of the disc spaces in the decreasing order of severity at C5-6, C6-7

and C4-5. * * *"
This diagnostic report did not comment on claimant's degree of impairment.

Claimant was examined on appellee Industrial Commission's behalf by orthopedic specialist Dr. W. Jerry McCloud. His July 20, 1988 report noted a loss of seventy percent of lumbar reserve and function. Partial lumbarization was also noted. In addition, cervical X-rays:

"* * * demonstrate distinct narrowing of the interbody space between C4 and C5, C5 and C6 and C6 and C7. There does appear to be encroachment posteriorly at each of these levels as well. In the lumbar films there is partial lumbarization of the first sacral segment with some narrowing of the interbody space between L5 and S1.

"In summary, this individual does have a wide variety of sources of loss of function of a variety of magnitude. She does have a post laminectomy syndrome with chronic compromise of probably the 1st sacral nerve root into her right lower extremity. She also has significant limitation of both lumbar and cervical reserve and function. * * *

"It is my opinion that this patient does present with medical evidence consistent with considering her permanently and totally impaired. I do not think she would be capable of sustained remunerative employment in the future." Id.

The commission, based partially on the report of Dr. McCloud, found claimant permanently and totally disabled as of July 20, 1988 - - the date of Dr. McCloud's report - - and awarded compensation as of that date.

Claimant subsequently moved to backdate the onset of compensation to August 18, 1987 - - the date of Dr. Curry's report. Claimant reasoned that because the disc narrowing condition upon which Dr. McCloud's permanent total impairment opinion was based was noted earlier by Dr. Curry, permanent total disability also existed as early as the latter's report.

On April 10, 1989, the commission's legal advisor wrote to claimant's counsel. The letter stated:

"On 3-7-89, you directed a letter and motion to my office for change of the starting date for PTD. You referred to the x-ray report of Dr. Curry, dated 8-18-87. You will note that Dr. Curry's report was obtained by Dr. Timperman. * * * Dr. Timperman's letter of 8-6-87 stated that following receipt of the x-rays, an additional comment would be made.

"I have searched through the file for that information, and I can find no additional report from Dr. Timperman. Therefore, would you kindly obtain the so-called additional comment in re Dr. Curry's x-rays, and submit same to my office at your earliest convenience. Further action on claimant's motion will be held, pending receipt of same."

Claimant responded with a October 24, 1989 letter from Dr. Timperman, which stated in full:

"In answer to your letter of September 26, 1989, the only comment I can make is the X rays of 8-18-87, read by Dr. Curry of Mansfield General Hospital, demonstrate degenerative arthritis of the spine.

"The determination as to the date the disability began, is an arbitrary one, and not up to me to determine."

Dr. Curry responded on June 19, 1990 as follows:

"* * * I reviewed this patient's films that I originally read on August 18, 1987. This study included examination of the cervical spine, dorsal spine and the lumbosacral spine. The findings all appeared to be on a degenerative basis. Therefore, these objective findings would generally be developing over a period of years. Although Dr. McCloud's report was basically a summary, his findings certainly agree closely with mine and I would suspect that any changes between my examination and his studies would be minimal and possibly not easy to differentiate.

"In any case, the findings that I reported would in no way be reversible from an objective point of view. However, the degree of disability could only be evaluated by hands on interview and physical examination. Certainly response to degenerative change of the spine is somewhat individual with some people being able to work effectively with considerable change and others being limited even only with minimal change. Since I did not have the opportunity to examine this patient directly, my comments on permanent or temporary disability would be inopportune." (Emphasis added.)

The commission denied claimant's motion for a change in starting date for permanent total disability benefits, based on the report of Dr. Curry, who made no statement as to the claimant's extent of impairment, and also upon the failure of Dr. Timperman to comment upon the X-ray reports of Dr. Curry.

Claimant filed a complaint in mandamus in the Court of Appeals for Franklin County, alleging that the commission abused its discretion by failing to backdate her award to August 18, 1987. The appellate court disagreed, writing:

"It was not an abuse of discretion for the Industrial Commission to establish the beginning date of permanent and total disability of July 20, 1988. Prior to that time, no doctor had issued an opinion that relator was incapable of sustained remunerative employment. While there may be a reasonable inference from that evidence that relator's condition was the same on August 18, 1987, as it was on July 20, 1988, it was not arbitrary or capricious for the Industrial Commission to establish the later date as the starting date, since, even though that inference may have been logical, it was not required and was not the only inference that could be drawn."

This cause is now before this court upon an appeal as of right.

William Paul Bringman, for appellant.
Lee I. Fisher, Attorney General, and Merl H. Wayman, Assistant Attorney General, for appellee.

Per Curiam. Claimant maintains that Dr. Curry's August 18, 1987 report mandates that permanent total disability commence as of that date. We find otherwise.

In some cases, medical evidence that is silent on the extent of the claimant's impairment could support a retroactive permanent total disability award if it documents the presence of conditions subsequently found to be disabling. In this case, however, the persuasiveness of Dr. Curry's August 18, 1987 report is undermined by the June 19, 1990 letter that

followed.  In it, Dr. Curry specifically said that it would be inappropriate for him to base an impairment assessment on that report.  Accordingly, if the author himself believes that his report is an improper foundation on which to base an impairment assessment, the commission's decision not to rely on that report is not an abuse of discretion.

The judgment of the court of appeals is affirmed.

Judgment affirmed.

Moyer, C.J., A.W. Sweeney, Douglas, Wright,  Resnick, F.E. Sweeney and Pfeifer, JJ., concur.